1
2
3
4
5
6
7      IN THE UNITED STATES DISTRICT COURT

8      FOR THE EASTERN DISTRICT OF CALIFORNIA

9 RONALD GARNES,

10     Petitioner,      No. CIV S-03-0527 FCD EFB P

11   vs.

12 ANTHONY LAMARQUE, et al.,

13     Respondents.   <u>FINDINGS AND RECOMMENDATIONS</u>

14 _____/

15     Petitioner is a state prisoner proceeding *in propria persona* with an application for

16 a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2000 judgment of

17 conviction entered against him in the Solano County Superior Court on charges of attempted

18 murder, assault with a deadly weapon, assault, and grossly negligent discharge of a firearm, with

19 several enhancements for use of a firearm.  Petitioner seeks relief on the grounds that: (1) there is

20 insufficient evidence to support his attempted murder conviction; (2) the trial court erred in

21 excluding relevant evidence; (3) the trial court erred in admitting evidence of petitioner's prior

22 conduct; (4) he received ineffective assistance of trial counsel; (5) jury instruction error violated

23 his right to due process; and (6) the cumulative effect of errors at his trial violated his right to

24 due process.  Upon careful consideration of the record and the applicable law, the undersigned

25 will recommend that petitioner's application for habeas corpus relief be denied.

26 ////

1

FACTS[1]

The charges against appellant arose out of a series of fights between appellant and Webster Burks on March 11, 1999, that eventually involved several other individuals who sided with appellant or Burks, and culminated with appellant firing his gun at Burks as Burks ran away.  According to appellant, he first confronted Burks because Burks was selling marijuana in front of appellant's mother's house.  Burks was angry, but left.  Burks returned a while later, claiming he was missing some property, and appellant and Burks became involved in a physical fight, with appellant's sister, Sabra Garnes, joining in.  A neighbor broke up the fight, but it later was renewed when Burks returned with his girlfriend, Kaima Davis, and other members of Davis's family, to demand his property.  Burks and appellant resumed fighting, and eventually appellant yelled to Sabra to get his gun.  Sabra pointed the gun in the air, and told everyone to leave, but they ignored her.  Someone took the gun and put it under a mat on the porch.  A general melee ensued, in which Sabra and Burks began fighting, Kaima Davis assisted Burks, and others joined in, or tried to break it up.

Appellant ran to the porch and retrieved the gun.  He testified that he fired a shot into the air, hoping everyone would leave, but no one reacted.  Appellant testified that he then fired two shots at some cars parked about 15 to 20 feet away from Burks, and then Burks turned and ran, as appellant fired another shot.

Burks testified that when appellant picked up the gun, he looked at Burks, said, "yeah, you," and began to fire from about 22 feet away.  Burks turned and started running, and as he ran, he heard a bullet ring by his ear.  Burks ran past several cars, and heard several more shots as he ran.  He turned to see appellant running after him, with the gun pointed in Burk's direction.  Other witnesses also saw appellant firing at Burks as he ran.

Police investigators found several nine millimeter shell casings in front of the house at 175 Kemper; two live rounds in a bedroom; a live round in front of a nearby house; a bullet hole, and two bullet fragments in a car parked in front of a house down the street; and two bullet holes in a car parked in front of 806 Gateway.

/////

////

---

[1]  This statement of facts is taken from the November 8, 2001 opinion by the California Court of Appeal for the First Appellate District (hereinafter Opinion), at pgs. 1-2, appended as Exhibit F to respondent's Answer, filed on June 26, 2003.

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 573 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

/////

1    The court looks to the last reasoned state court decision as the basis for the state

2    court judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

3    reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

4    habeas court independently reviews the record to determine whether habeas corpus relief is

5    available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

6    II.  Petitioner's Claims

7        A.  Insufficient Evidence

8        Petitioner's first claim is that his conviction on the charge of attempted murder

9    must be reversed because there was insufficient evidence introduced at trial that he had the intent

10   to kill.  Pet. at 7-8.  Petitioner argues that the evidence demonstrated only that he intended to

11   frighten his attackers and not that he intended to kill Burks.  Points and Authorities in Support of

12   Petition for Writ of Habeas Corpus (P&A) at 12.  Petitioner notes that he did not hit Burks, even

13   though he was shooting at close range.  *Id.*

14   This claim was rejected by the California Court of Appeal in a written decision on

15   petitioner's direct appeal, and by the California Supreme Court without comment on petition for

16   review.  Answer, Exs. F, G, H.  The California Court of Appeal explained its reasoning as

17   follows:

18       When reviewing a judgment for substantial evidence this court
         must draw all inferences, and resolve all conflicts, in favor of the
19       judgment, and defer to the credibility determinations made by the
         trier of fact.  (People v. Wharton (1991) 53 Cal.3d 522, 546;
20       People v. Johnson (1980) 26 Cal.3d 557, 576.)  Absent direct
         evidence of the defendant's state of mind at the moment he shoots,
21       the trier of fact may infer it from "all the circumstances of the
         attempt, including the putative killer's actions and words."
22       (People v. Lashley, supra, 1 Cal.App.4th 938, 946.)  "The act of
         firing toward a victim at a close, but not point black, range 'in a
23       manner that could have inflicted a mortal wound had the bullet
         been on target is sufficient to support an inference of intent to kill .
24       . . .'" (People v. Chinchilla (1997) 52 Cal.App.4th 683, 690,
         quoting People v. Lashley, supra, 1 Cal.App.4th at p. 945.)
25
         Conflicting inferences could be drawn from the circumstances of
26       the attempt, in this case.  Viewing the evidence in the light most

favorable to the judgment, substantial evidence supports the finding of intent to kill: Before firing, appellant looked at Burks and said, "Yeah, you." He fired at Burks from a distance of approximately 22 feet, and continued to fire after Burks turned and ran. As he ran, Burks turned to see appellant running after him, and pointing the gun at him. Bullets were found in cars along the path of Burks's retreat. All of the foregoing evidence supports the inference that appellant aimed the gun at Burks, and intended to kill him. That he was unsuccessful either because of poor marksmanship, or because he abandoned his effort "out of necessity or fear," does not necessarily "establish a less culpable state of mind." (People v. Lashley, supra, 1 Cal.App.4th at p. 945.)

Opinion at 3.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005). In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case. Id.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

1   *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987).  It is

2   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

3   reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  If the trier

4   of fact could draw conflicting inferences from the evidence, the court in its review will assign

5   the inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994).  The

6   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

7   the jury could reasonably arrive at its verdict.  *United States v. Mares*, 940 F.2d 455, 458 (9th

8   Cir. 1991).  "The question is not whether we are personally convinced beyond a reasonable

9   doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."

10  *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines the

11  sufficiency of the evidence in reference to the substantive elements of the criminal offense as

12  defined by state law.  *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

13          Intent to kill is an element of the crime of attempted murder under California law.

14  Cal. Pen. Code §§ 187, 664.  *See also People v. Lashley*, 1 Cal.App.4th 938, 945 n.4 (1991).  As

15  described by the California Court of Appeal, Burks testified that petitioner pointed a gun at him

16  from a distance of approximately 22 feet and fired.  Petitioner continued firing while pursuing

17  Burks down the street.  Police investigators found bullets and bullet holes in front of homes and

18  in cars parked along the path of Burks's retreat.  These facts could reasonably support a finding

19  that petitioner intended to kill Burks.  The fact that there was also evidence supporting

20  petitioner's claim that he only intended to frighten Burks and his associates is not dispositive of

21  this claim.  Notwithstanding any exculpatory evidence, there was substantial evidence from

22  which a rational trier of fact could have found beyond a reasonable doubt that petitioner was

23  guilty of intent to commit murder.  Because there was substantial evidence presented at trial to

24  support petitioner's conviction on these charges, the state court's analysis of this claim is not

25  "objectively unreasonable." *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  *See also* 28

26  U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas relief on this ground.

B.  Exclusion of Relevant Evidence

Petitioner's second claim is that the trial court violated his rights to due process, to confront the witnesses against him, and to present a defense when it refused to allow him to cross-examine Burks with evidence that at the time of trial Burks had criminal charges pending against him for possession of cocaine and marijuana for sale arising from an altercation with a police officer in December, 1999.  Pet. at 8; P&A at 14.  Petitioner contends that the jury would have "received a significantly different impression of Burks' credibility" if he had been allowed to impeach Burks with his pending criminal charges.  P&A at 17, 18.  Petitioner also argues that this evidence would have supported his contested assertion that Burks was attempting to sell marijuana outside petitioner's mother's house when the confrontation occurred, and would have provided evidence that Burks had a motive to lie on the witness stand in order to gain a possible advantage in his pending criminal case.  Id. at 18-19.  Finally, petitioner contends that the trial court's exclusion of evidence of Burks's pending drug charges was unfair because the court allowed evidence that petitioner had a prior conviction for possession for sale of marijuana.  Id. at 20.

1.  State Court Opinion

The last reasoned rejection of this claim is the decision of the California Court of Appeal on petitioner's direct appeal.  The state court explained its reasoning as follows:

> The court ruled, pursuant to Evidence Code section 352, that appellant could impeach Burks with several prior incidents in which he gave false information to a police officer and resisted arrests.  The court also allowed the defense to present the testimony of a Vallejo police officer that, when he attempted to arrest Burks in the December 1999 incident, Burks resisted arrest. However, because of concerns that Burks would invoke the Fifth Amendment if asked about the pending charges, and that all of Burks's testimony could be stricken, which would necessitate the reading of his preliminary hearing transcript, the court did not allow appellant to cross-examine Burks, regarding the pending charges of possession of marijuana, or cocaine base for sale.

> Appellant contends that the court abused its discretion, and that the limitation it imposed upon cross-examination of Burks violated

7

appellant's right of confrontation, and his ability to present a complete defense.

"A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (People v. Quartermain (1997) 16 Cal.4th 600, 623-624; accord, Delaware v. Van Arsdall (1986) 475 U.S. 673, 680; People v. Belmontes (1988) 45 Cal.3d 744, 781.)  Here, the jury was informed through cross-examination that Burks had twice lied to police officers, and fled from another who was running a warrant check on him, and with respect to the December 1999 incident, they learned that he had resisted arrest by punching the arresting officer.  Sabra Garnes testified that Burks brought marijuana to her house every day, and on the day of the shooting had returned to the house to retrieve his lost stash.  Appellant also testified that Burks was selling drugs in front of appellant's mother's house on the day of the incident.  This evidence clearly conveyed the impression that Burks was dishonest, engaged in assaultive behavior, and involved in criminal activities, including selling drugs.  The marginal impact of the specific information that in the December 1999 altercation with a police officer he was charged with possession of marijuana and cocaine base for sale, would not have created a significantly different impression, and the limitation the court imposed therefore did not violate appellant's right of confrontation.

Nor did the court abuse its discretion pursuant to Evidence Code section 352.  The additional information that the December 1999 incident involved possession of marijuana for sale, a crime of moral turpitude, was cumulative of other permitted impeachment evidence, and therefore only of marginal probative value.  Weighed against this was the substantial risk of undue consumption of time if Burks had invoked the Fifth Amendment, and all his testimony had been stricken.  (See People v. Jennings (1991) 53 Cal.3d 334, 372 [court did not abuse its discretion under § 352, or violate the defendant's confrontation rights by restricting impeachment to avoid consumption of time as a result of witnesses invocation of Fifth Amendment].)  The court also took into consideration that both the prosecution, and appellant, wanted Burks to testify as a live witness, and accomplishing that goal required some restriction on the scope of cross-examination to avoid invocation of the Fifth Amendment.

Appellant argues that questioning Burks regarding the pending charges of possession of cocaine and marijuana for sale would not have been merely cumulative of other impeachment, because appellant could have relied upon this evidence to impeach Burks on a specific issue, i.e., his denial that he was selling marijuana in front of appellant's mother's house on the day the shooting occurred.  He suggests that evidence that Burks was arrested in

December 1999 for possession of marijuana for sale was admissible pursuant to Evidence Code sections 1101 and 1103, to show that Burks also was selling marijuana on the day of the shooting, as appellant and Sabra Garnes testified.  Yet, in the argument prior to the court's evidentiary ruling, appellant did not suggest to the trial court that the evidence of pending charges was independently admissible for this purpose.  Instead, she argued only that the conduct of possession for sale was admissible as a crime of moral turpitude.  The court did not have an opportunity to rule on the issue, and it is therefore waived on appeal.  In any event, the court did allow the direct testimony of Sabra Garnes, and appellant, that Burks was selling marijuana.

Appellant also contends that the court's ruling prohibited him from demonstrating Burks's bias arising from the fact of pending charges, and the hope that, if he testified favorably for the prosecution, he might receive more lenient treatment.  Again, the contention is waived because it was not made in the trial court.  Had appellant presented this argument below, it is possible that the court could have modified its ruling to allow appellant either to ask Burks whether he had any charges currently pending against him, without inquiring into the nature of the charges, or any other questioning which might not have provoked the invocation of the Fifth Amendment.  Again, however, it is not reasonably probable, that evidence of this particular bias would have resulted in a more favorable outcome, in light of the admission of other evidence impeaching Burks's credibility.

We conclude, based upon the arguments presented to it, the court struck a reasonable balance between appellant's need to cross-examine and impeach Burks, and avoidance of the risk that Burks would invoke the Fifth Amendment if asked about the pending charges, especially in light of the stated desire of *both* the defense and the prosecution that it was important to have Burks testify "live" to the jury.  The court reasonably concluded that the risk that time would be wasted, by striking his testimony, outweighed the marginal probative value of presenting the jury with yet another reason why it could discredit Burks's testimony.[2]

Opinion at 4-6.

---

   [2] Appellant also contends that the court's ruling was an abuse of discretion because the court did allow *appellant* to be impeached with a prior conviction for possession of marijuana for sale.  Appellant is comparing apples and oranges: Burks had many other convictions with which he could be impeached, and allowing questions regarding the *pending charge* posed the risk that Burks would invoke the Fifth Amendment.  Appellant had only one prior conviction, impeachment did not pose any Fifth Amendment problem, and the court ruled that it must be sanitized.

2. <u>Procedural Default</u>

As set forth above, the state appellate court concluded that petitioner had waived certain of his arguments on appeal because of his trial attorney's failure to raise the appropriate objections at trial.  Specifically, the appellate court noted that trial counsel failed to suggest to the trial court that the excluded evidence would have been relevant to show that Burks was selling marijuana on the day of the shooting, as appellant and Sabra Garnes testified; or that it was "relevant to Burks's bias arising from the fact of pending charges, and the hope that, if he testified favorably for the prosecution, he might receive more lenient treatment."  (Opinion at 6.) Respondent suggests that the state appellate court's finding of waiver constitutes a state procedural bar precluding this court from addressing the merits of these two arguments. (Answer at 9 n.4.)

State courts may decline to review a claim based on a procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)); *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.")  The state rule must also be "independent" in that it is not "interwoven with the federal law."  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50.

1    Respondent has met his burden of adequately pleading an independent and adequate state

2    procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Petitioner does not

3    deny that his trial counsel did not raise a contemporaneous objection on these two grounds to the

4    admission of evidence of Burks's pending criminal charges.  Although the state appellate court

5    addressed petitioner's due process claim on the merits, it also expressly held that these two

6    specific grounds were waived on appeal because of defense counsel's failure to object.

7    Petitioner has failed to meet his burden of asserting specific factual allegations that demonstrate

8    the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied

9    or not well-established, either as a general rule or as applied to him.  *Bennett*  322 F.3d at 586;

10   *Chein*, 323 F.3d at 751-52; *Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th Cir. 2002).

11   Petitioner's claims therefore appear to be procedurally barred.  *See Coleman*, 501 U.S. at 747;

12   *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th

13   Cir. 2004).  Petitioner has also failed to demonstrate that there was cause for his procedural

14   default or that a miscarriage of justice would result absent review of the claim by this court.  *See*

15   *Coleman*, 501 U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).  However,

16   for the reasons discussed below, even if these claims were not procedurally barred, they lack

17   merit and must be denied.

18          3. <u>Analysis</u>

19          Absent some federal constitutional violation, a violation of state law does not

20   provide a basis for habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Accordingly,

21   a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it

22   renders the state proceedings so fundamentally unfair as to violate due process.  *Drayden v.*

23   *White*, 232 F.3d 704, 710 (9th Cir. 2000); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999);

24   *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

25          Criminal defendants have a constitutional right, implicit in the Sixth Amendment,

26   to present a defense; this right is "a fundamental element of due process of law."  *Washington v.*

11

1  *Texas*, 388 U.S. 14, 19 (1967).  *See also Crane v. Kentucky*, 476 U.S. 683, 687, 690 (1986);

2  *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Webb v. Texas*, 409 U.S. 95, 98 (1972).

3  However, the constitutional right to present a defense is not absolute.  *Alcala v. Woodford*, 334

4  F.3d 862, 877 (9th Cir. 2003).  "Even relevant and reliable evidence can be excluded when the

5  state interest is strong."  *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983).  Thus,

6      [w]here evidence has been excluded pursuant to a state evidentiary
7      law, we use a balancing test:  In weighing the importance of
       evidence offered by a defendant against the state's interest in
       exclusion, the court should consider the probative value of the
8      evidence on the central issue; its reliability; whether it is capable
       of evaluation by the trier of fact; whether it is the sole evidence on
9      the issue or merely cumulative; and whether it constitutes a major
       part of the attempted defense. A court must also consider the
10     purpose of the [evidentiary] rule; its importance; how well the rule
       implements its purpose; and how well the purpose applies to the
11     case at hand. The court must give due weight to the substantial
       state interest in preserving orderly trials, in judicial efficiency, and
12     in excluding unreliable or prejudicial evidence.

13  *Alcala*, 334 F.3d at 877 (quoting *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).  *See also*

14  *Drayden*, 232 F. 3d at 711.  A state law justification for exclusion of evidence does not abridge a

15  criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and

16  "infringe[s] upon a weighty interest of the accused."  *United States v. Scheffer*, 523 U.S. 303,

17  308 (1998).  *See also Crane*, 476 U.S. at 689-91 (discussion of the tension between the

18  discretion of state courts to exclude evidence at trial and the federal constitutional right to

19  "present a complete defense"); *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002).

20      The right to confront witnesses, guaranteed by the Sixth and Fourteenth

21  Amendments, includes the right to cross-examine adverse witnesses to attack their general

22  credibility or show their possible bias or self-interest in testifying.  *Olden v. Kentucky*, 488 U.S.

23  227, 231 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986); *Davis v. Alaska*, 415

24  U.S. 308, 316 (1973); *United States v. Larson*, ___ F.3d ___, 2006 WL 2466872 (9th Cir. 2006).

25  A Confrontation Clause violation occurs where the defendant is prevented from investigating "a

26  prototypical form of bias" if "[a] reasonable jury might have received a significantly different

1  impression of [the witness'] credibility had respondent's counsel been permitted to pursue his

2  proposed line of cross-examination"). *Van Arsdall*, 475 U.S. at 680.  However, "[t]rial judges

3  retain wide latitude insofar as the Confrontation Clause is concerned" and may impose

4  limitations on cross-examination that are "reasonable' and are not "arbitrary or disproportionate

5  to the purposes they are designed to serve." *Id.* at 679; *Michigan v. Lucas*, 500 U.S. 145, 151

6  (1991).  "The Confrontation Clause guarantees an opportunity for effective cross-examination,

7  not cross-examination that is effective in whatever way, and to whatever extent, the defense

8  might wish." *Van Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20

9  (1985) (per curiam)).  The Ninth Circuit utilizes a three-part test to determine whether a trial

10  court violated the Confrontation Clause by excluding evidence: "(1) whether the excluded

11  evidence was relevant; (2) whether there were other legitimate interests outweighing the

12  defendant's interest in presenting the evidence; and (3) whether the exclusion of evidence left the

13  jury with sufficient information to assess the credibility of the witness." *Larson*, 2006 WL

14  2466872 at *4.

15        The improper denial of a defendant's opportunity to impeach a witness for bias is

16  subject to a harmless-error analysis.  *Van Arsdall*, 475 U.S. at 684; *Bockting v. Bayer*, 399 F.3d

17  1010, 1020 (9th Cir. 2005). ("Confrontation Clause violations are subject to harmless error

18  analysis and thus may be excused depending on the state of the evidence at trial").  Thus,

19  petitioner is not entitled to relief unless he can establish that the trial court's error "had

20  substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.

21  Abrahamson*, 507 U.S. 619, 637 (1993).  *See also Forn v. Hornung*  343 F.3d 990, 999 (9th Cir.

22  2003) (finding that a Confrontation Clause error did not have a "substantial and injurious" effect

23  on the verdict and that the error was therefore harmless).

24        The conclusion of the state appellate court that petitioner's right to confront the

25  witnesses against him was not violated by the exclusion of evidence that Burks had criminal

26  charges pending at the time of trial is not contrary to or an unreasonable application of the

1   federal principles discussed above and should not be set aside.  Petitioner's jury was advised of

2   sufficient information to enable it to effectively assess Burks's credibility and to "appropriately

3   draw inferences relating to the reliability of the witness."  *Van Arsdall*, 475 U.S. at 680.  As

4   noted by the California Court of Appeal, the jury learned that Burks had lied to police officers,

5   had fled from an officer who was running a warrant check, had punched a police officer who was

6   trying to arrest him, and had possessed and sold drugs.  Under these circumstances, evidence that

7   Burks was facing drug charges would not have given the jury a significantly different impression

8   of his credibility.  The California Court of Appeal did not unreasonably apply clearly established

9   federal law in concluding that there was no Confrontation Clause error here.

10          In addition, legitimate interests outweighed the slight probative value of the

11   excluded evidence.  *See Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1037 (9th

12   Cir. 2005).  Specifically, the trial court wished to avoid the time-consuming task of reading

13   Burks' preliminary hearing transcript to the jury, and both parties wanted Burks to testify in

14   person.  It is true that evidence of Burks's pending criminal charges could have enabled the

15   defense to argue that he was testifying favorably for the prosecution in order to obtain lenient

16   treatment in his criminal case.  However, there is no information that Burks received or was even

17   offered favorable treatment on his pending criminal charges.  Accordingly, any inference of bias

18   would have been based on pure speculation.  Although evidence regarding Burks' pending

19   charges was technically relevant to his bias or motivation in testifying, it was only marginally so

20   given the circumstances of this case.  For this reason, even if there were any Confrontation

21   Clause error, it would not have had  "substantial and injurious effect or influence in determining

22   the jury's verdict."  *Brecht*, 507 U.S. at 637.

23          Nor did the exclusion of this evidence render petitioner's trial fundamentally

24   unfair or preclude petitioner from presenting his defense.  Evidence that Burks had drug charges

25   pending against him was not particularly probative on the central issue of petitioner's intent

26   when he fired the gun.  Both petitioner and the prosecutor wanted Burks to testify as a live

14

2e3d2c9d44d982b5

witness.  Further, both petitioner and Sabra Garnes testified in support of the defense argument that Burks was selling marijuana in front of petitioner's mother's home immediately prior to the altercation.  The decision of the California Court of Appeal that the trial court imposed reasonable restrictions on cross-examination in order to strike a balance between petitioner's constitutional rights, the desire of both parties that Burks testify in person, and the need for judicial efficiency, is not contrary to United States Supreme Court precedent nor is it based on an unreasonable determination of the facts of this case.

The state appellate court also concluded that it was not a violation of due process to allow the introduction of evidence of petitioner's prior conviction for possession of marijuana for sale while excluding evidence of Burks's pending charge for essentially the same offense. This court agrees.  As explained by the California Court of Appeal, the decision to allow or not to allow evidence of petitioner's prior conviction and/or Burks' pending criminal charges was dependent on the circumstances pertaining to each individual case.  Here, those circumstances were too distinct to allow for comparison.  The trial court's decisions to exclude evidence of Burks's pending criminal charges and to allow evidence of petitioner's prior conviction were not fundamentally unfair.

The opinion of the California Court of Appeal that petitioner's constitutional rights were not violated by the exclusion of evidence that Burks had criminal charges pending against him is not contrary to or an unreasonable application of United States Supreme Court authority.  Accordingly, petitioner is not entitled to relief on this claim.

C. Admission of Evidence of Petitioner's Prior Conduct

In his next claim, petitioner contends that the trial court violated his right to due process when it improperly allowed the admission of evidence of his "prior conduct selling marijuana."  Pet. at 8; P&A at 25.  Petitioner argues that the trial court's decision to admit evidence of petitioner's prior bad acts while disallowing evidence of Burks' pending criminal

/////

charges was fundamentally unfair, and contends that the state appellate court's decision rejecting

this claim was based on an unreasonable determination of the facts of this case.

This claim was rejected by the California Court of Appeal in a written decision on

petitioner's direct appeal, and by the California Supreme Court without comment on petition for

review.  The state appellate court explained the facts surrounding the claim as follows:

> Appellant, through the direct testimony of Sabra Garnes,
> introduced evidence that Burks brought marijuana to her mother's
> house every day, and that on the day of the incident Sabra had
> been smoking with Burks.  Burks left, but returned later because he
> had lost his stash.  Then, on cross-examination, Sabra stated that
> Burks was trying to make a sale of marijuana in front of the house,
> and that was why appellant told Burks to leave.  The prosecutor
> asked whether appellant was upset, and Sabra responded, "Not
> really."  The prosecutor then stated, "Not really.  Well, didn't you
> tell the police that your brother sold weed?"  After Sabra admitted
> that she had made this statement, appellant objected on the ground
> of relevance, and moved to strike Sabra's response.  The court
> overruled the objection and the prosecutor asked, "[s]o your
> brother was selling weed at that time, or used to . . .?," and Sabra,
> replied that he used to.[3]

Opinion at 7.

The appellate court rejected petitioner's argument that the trial court abused its

discretion in overruling petitioner's relevance objection to Sabra Garnes's testimony.  The court

explained its reasoning as follows:

> The court has wide latitude in determining the relevance of
> evidence.  (People v. Scheid (1997) 16 Cal.4th 1, 14.)  Here, Ms.
> Garnes testified that appellant asked Barnes to leave because he
> was selling marijuana in front of appellant's mother's house, but
> that appellant was not upset about it.  Her statement to the police
> that appellant also sold marijuana then became relevant because, if
> he also sold marijuana and was protecting his turf, that fact would
> have a tendency in reason to refute Ms. Garnes's assertion that
> appellant was not upset.  Appellant's defense portrayed Burks as
> the aggressor, and appellant sought to prove that he acted only in

---

[3]  On redirect Sabra stated that she falsely told the police appellant was selling marijuana
at the time, and kept a box of marijuana in his bedroom because they pressured her.  The court
sustained appellant's relevance and Evidence Code section 352 objection to admission of a bag
of marijuana seeds the police found in a box where Ms. Garnes had said appellant kept his
marijuana.

1    defense of himself and of Sabra, and that he fired the gun only to
2    scare Burks away.  Although the reason why the first fight started
     was not essential to the prosecution's case in light of other
3    circumstances surrounding the shooting that supported the
     inference of intent to kill, evidence that appellant also sold
4    marijuana had a tendency in reason to support the inference that
     appellant was defending his territory, and fired the gun at Burks
5    not to defend himself, or his sister, but to eliminate his
     competition.  It is immaterial that the prosecutor ultimately chose
6    not to advance this theory in closing argument, because we review
     the court's ruling based upon the material issues at the time the
7    objection is made.

8    Opinion at 7-8.

9           As discussed above, a state court's evidentiary ruling is not subject to federal

10   habeas review unless the ruling violates federal law, either by infringing upon a specific federal

11   constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial

12   guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal*, 926 F.2d at

13   919-20.  A federal court cannot disturb a state court's decision to admit evidence on due process

14   grounds unless the admission of the evidence was "arbitrary or so prejudicial that it rendered the

15   trial fundamentally unfair."  *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley v.*

16   *Sumner*, 784 F.2d 984, 990 (9th Cir. 1986).  *See also Mancuso v. Olivarez*, 292 F. 3d 939, 956

17   (2002) (a writ of habeas corpus will be granted for an erroneous admission of evidence "only

18   where the 'testimony is almost entirely unreliable and ... the factfinder and the adversary system

19   will not be competent to uncover, recognize, and take due account of its shortcomings.'"

20   (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).  In addition, in order to obtain habeas

21   relief on the basis of evidentiary error, petitioner must show that the error was not harmless

22   under *Brecht*.  *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001).  Therefore, in order to grant

23   relief, the habeas court must find that the error had "'a substantial and injurious effect' on the

24   verdict."  *Brecht*, 507 U.S. at 623).

25          The use of "other acts" evidence as character evidence is "not only impermissible

26   under the theory of evidence codified in the California rules of evidence (Cal.Evid.Code § 1101

                                        17

1    (West Supp.1993) and the Federal Rules of Evidence (Fed.R.Evid. 404(b)), but is contrary to

2    firmly established principles of Anglo-American jurisprudence." *McKinney v. Rees*, 993 F.2d

3    1378, 1380 (9th Cir. 1993).  However, under Ninth Circuit law, the admission of "other acts"

4    evidence violates due process only if there were no other permissible inferences the factfinder

5    could have drawn from the evidence.  *Id.* at 1381 (question is "whether any inferences relevant

6    to a fact of consequence may be drawn from each piece of the evidence, or whether they lead

7    only to impermissible inferences about the defendant's character"); *Jammal*, 926 F.2d at 920

8    ("[e]vidence introduced by the prosecution will often raise more than one inference, some

9    permissible, some not; we must rely on the jury to sort them out in light of the court's

10   instructions").  *See also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) (evidence

11   of prior similar crimes "will only sometimes violate the constitutional right to a fair trial, if it is

12   of no relevance, or if its potential for prejudice far outweighs what little relevance it might

13   have").[4]

14           As noted by the state appellate court, evidence that petitioner was selling

15   marijuana in the same location as Burks, if true, could have had a tendency to show petitioner's

16   intent (i.e., that he intended to kill Burks in order to eliminate competition or to retaliate for

17   intruding into his market).  For this reason, there was a rational inference the trial court could

18   draw from the challenged evidence that was not constitutionally impermissible.[5]  In addition, the

19

20           [4]  It is an open question in The United States Supreme Court whether it violates due
     process to admit other crimes evidence for the purpose of showing conduct in conformity
21   therewith.  *See Estelle*, 502 U.S. at 75 n.5.

22           [5]  Petitioner argues that there was no evidence that petitioner and Burks were competing
     over the opportunity to sell drugs in front of petitioner's mother's house.  Therefore, according
23   to petitioner, the appellate court's use of this rationalization for the trial court's decision is based
     on an unreasonable determination of the facts in this case. P&A at 26.  Petitioner notes that the
24   prosecutor did not argue "or in any way suggest[] that the case was about a drug turf war." *Id.*
     He states that, on the contrary, all of the evidence introduced at trial indicated that petitioner had
25   stopped selling marijuana before the confrontation with Burks.  *Id.  See e.g.*, RT at 298, 303-04,
     312.  The trial judge did not explain the basis for his ruling on petitioner's objection.  Id. at 297-
26   98.)  Accordingly, it is not possible to determine whether the trial judge saw the same relevance
     in Sabra Burks's testimony that the appellate court did.  However, the appellate court's ultimate

1   evidence was not unduly inflammatory or prejudicial.  Although Sabra Garnes admitted that she

2   told the police petitioner had sold marijuana in the past, she explained during cross-examination

3   that she had only done so because she felt pressured by the police.  Petitioner denied that he was

4   selling drugs at the time of the altercation with Burks.  Further, as described by the state

5   appellate court, evidence of petitioner's intent was obtained from the actual circumstances of the

6   shooting as opposed to any theory that petitioner was trying to defend his turf.  Under these

7   circumstances, the testimony of Sabra Garnes with regard to petitioner's past conduct, which

8   was recanted by her and denied by petitioner, could not have had "a substantial and injurious

9   effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

10          The decision of the California Court of Appeal with respect to this claim is not

11   contrary to or an unreasonable application of United States Supreme Court authority.

12   Accordingly, petitioner is not entitled to habeas relief on this claim.

13          D.  Ineffective Assistance of Trial Counsel

14          Petitioner's next claim is that his trial attorney rendered ineffective assistance

15   when he failed to raise a Cal. Evid. Code § 352 objection to the prosecutor's question to Sabra

16   Garnes, described in the claim above.[6]  This claim was rejected by the California Court of

17   Appeal in a written decision on petitioner's direct appeal, and by the California Supreme Court

18

19   determination that the evidence was relevant on the theory that petitioner might have been
     attempting to eliminate his competition is not objectively unreasonable, given the facts of this

20   case.  The court notes that whether petitioner was actually engaged in selling drugs at the time of
     the altercation or whether he had ceased doing so has nothing to do with the propriety of the

21   prosecutor's question to Ms. Barnes.  If, as she testified, petitioner was selling drugs, this
     information could have provided evidence of petitioner's state of mind when he ordered Burks

22   off of his mother's property and fired a gun at his retreating figure.

23          [6] Cal. Evid. Code § 352 provides as follows:

24              The court in its discretion may exclude evidence if its probative
                value is substantially outweighed by the probability that its

25              admission will (a) necessitate undue consumption of time or (b)
                create substantial danger of undue prejudice, of confusing the

26              issues, or of misleading the jury.

without comment on petition for review.  The California Court of Appeal explained its reasoning

as follows:

> In order to prevail on his contention that his counsel rendered
> ineffective assistance of counsel, by failing also to object pursuant
> to Evidence Code section 352, appellant must show not only that
> counsel's performance fell below the standard of competence, but
> also that "there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been
> different."  (*Strickland v. Washington* (1984) 466 U.S. 668, 693-
> 694, 697.)  We need not decide whether counsel's performance fell
> below the standard of competence, because it is not reasonably
> probable that, in the absence of evidence that appellant also had
> sold marijuana, the result would have been more favorable.
> Although the prosecution's question regarding Sabra Garnes'
> statement to the police that appellant also sold marijuana satisfied
> the minimal standard of relevance, it ultimately did not materially
> assist the prosecutor in proving intent to kill.  Exclusion of this
> evidence would not have produced a more favorable result because
> *the primary evidence of intent to kill consisted of the
> circumstances surrounding the shooting itself, and the physical
> evidence relating to location of bullet holes, along the path of
> Burks's retreat.*  Nor did the admission of this evidence
> significantly affect the jury's assessment of appellant's credibility
> as compared to Burks, who also was impeached with multiple
> incidents involving lying to the police, and resisting arrest.[7]  We
> conclude it is not reasonably probable that the additional
> information that appellant also might have sold marijuana in the
> past, would have significantly affected the jury's credibility
> determination.

Opinion at 8-9 (emphasis added).  Given the strong physical evidence manifesting petitioner's

intent, the question of whether he was or was not in competition with Burks is of little

consequence.

The Sixth Amendment guarantees the effective assistance of counsel.  The United

States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

*Strickland v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

---

[7]  Appellant apparently decided to volunteer the nature of his prior conviction, but that strategic choice was not compelled by the prosecution's inquiry of Sabra, which did not ask about the nature of any prior convictions.  Both Sabra and appellant testified that, at the time of the shooting he was no longer engaged in marijuana selling, and the court refused to allow the prosecution to admit evidence of the marijuana seeds found in a box in appellant's bedroom.

counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Id.* at  687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.  See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

The conclusion of the California Court of Appeal that petitioner did not suffer prejudice from his trial counsel's failure to object to the prosecutor's question pursuant to Cal. Evid. Code § 352 is not contrary to or an unreasonable application of *Strickland* and should not be set aside.  The admission of evidence that petitioner used to sell marijuana, but was no longer doing so, could not have had a significant impact on these proceedings, where evidence of petitioner's intent was not dependent on a theory that he was a drug dealer competing with Burks, and where Burks's credibility was seriously undermined by evidence of his prior bad acts. There is no reasonable probability that the verdict would have been different had counsel raised an objection to the prosecutor's question pursuant to Cal. Evid. Code § 352.  Accordingly, petitioner is not entitled to relief on this claim.

21

E.  Jury Instruction Error

Petitioner raises two claims of jury instruction error.  After setting forth the applicable legal principles, the court will evaluate these claims in turn below.

1.  Legal Standards

In general, a challenge to jury instructions does not state a federal constitutional claim.  *See Middleton*, 768 F.2d at 1085 (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment."  *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).  To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due process.'"  *Prantil*, 843 F.2d at 317 (quoting *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'"  *Id.* (quoting *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

2.  California Jury Instruction (CALJIC) No. 2.21.2

The trial court instructed petitioner's jury with CALJIC No. 2.21.2, as follows:

> A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others.  You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars.

Clerk's Transcript on Appeal (CT) at 243.  Petitioner claims that this jury instruction unconstitutionally lessened the prosecution's burden of proving all elements of the crime beyond

1    a reasonable doubt, in violation of *Sullivan v. Louisiana*, 508 U.S. 275 (1993) (constitutionally

2    deficient reasonable-doubt instruction required reversal of conviction) and *In re Winship*, 397

3    U.S. 358 (1970) (due process clause requires proof beyond a reasonable doubt of every fact

4    necessary to constitute the charged crime).  Petitioner argues that Burks's testimony was too

5    unreliable to prove his guilt beyond a reasonable doubt, but that this jury instruction may have

6    persuaded the jurors to rely on the testimony in reaching their verdict, notwithstanding its overall

7    lack of truthfulness.  Specifically, petitioner argues: "a reasonable juror could have found that

8    Burks testified falsely as to some details but that the probability of truth favored his testimony in

9    other areas, even if Burks testimony was not reliable enough to prove petitioner's guilt beyond a

10   reasonable doubt."  P&A at 30.

11          The California Court of Appeal denied this claim because "[i]n *People v. Riel*

12   (2000) 22 Cal.4th 1153, 1200 the court rejected this challenge, and we are bound to follow it."

13   Opinion at 9.  In *Riel*, the California Supreme Court concluded that CALJIC No. 2.21.2 did not

14   reduce the prosecution's burden of proof where the jury was also correctly instructed on the

15   reasonable doubt standard and was told to "consider all the instructions as a whole and ... to

16   regard each in the light of all the others."  *Id.* at 1200.  In that case, "[t]he instructions as a whole

17   correctly instructed the jury on the prosecution's burden of proof."  *Id.*

18          Petitioner argues that the state appellate court's decision is contrary to the holding

19   in *Francis v. Franklin*, 471 U.S. 307 (1985) that a constitutionally infirm jury instruction is not

20   cured by a correct instruction where "a reviewing court has no way of knowing which of the two

21   irreconcilable instructions the jury applied in reaching their verdict."  *Id.* at 322.  Petitioner also

22   argues that the error in giving CALJIC No. 2.21.2 is not harmless because Burks' credibility was

23   crucial in this close case where there was a significant dispute regarding petitioner's intent when

24   he fired the gun.

25          In addition to being instructed with CALJIC No. 2.21.2, petitioner's jury was

26   correctly instructed on the concept of reasonable doubt and was told to consider the instructions

as a whole and "each in light of all the others."  CT at 232, 249.  The jury was further instructed

on how to evaluate inconsistent statements made by a witness and how to determine the

"believability" of a witness.  *Id.* at 239-40.  When viewed in the context of the instructions as a

whole, the giving of CALJIC No. 2.21.2 did not mislead petitioner's jurors as to how to evaluate

Burks's testimony or induce them to give it more weight than it deserved.  *Francis* involved a

situation where a jury instruction used a mandatory presumption to relieve the prosecution's

burden of proof on an element of the crime charged, and where nothing in the instructions as a

whole clarified that the correct instruction carried more weight than the improper instruction.

Neither of those factors is present in this case.  Accordingly, *Francis* does not dictate the result

here.

            In addition, there is no evidence in the record that the jury actually applied

CALJIC 2.21.1 to any part of the case before it.  On habeas review a trial error is harmless unless

it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht,*

507 U.S. at 637.  Petitioner provides no suggestion or argument as to the testimony on which the

jury may have found Burks "willfully false" or which part of his testimony carried a "probability

of truth."  Further, the instruction applied to all witnesses, and did not single out Burks or any

other witness.  As noted, the jury was given a list of factors to consider in determining the

truthfulness of the witnesses and was admonished not to disbelieve the testimony of a particular

witness simply because it contradicted the testimony of another witness.  CT at 242.  The

prosecutor did not rely on the instruction, or any facts that might have triggered it, at closing

argument.  Moreover, the text of CALJIC No. 2.21.2 specifically instructs the jury that "you may

reject the whole testimony of a witness who willfully has testified falsely as to a material point,

unless, from all the evidence, you shall believe the probability of truth favors his testimony in

other particulars," thereby informing the jury that it could choose to disregard the entire

testimony of a witness found to be materially false.  Because petitioner's jury "'remained free to

exercise its collective judgment to reject what it did not find trustworthy or plausible,' the

instruction could not be applied in a way that challenged the Constitution." *Turner v. Calderon,* 281 F.3d 851, 866 (9th Cir. 2002) (quoting *Cupp v. Naughten,* 414 U.S. 141, 149 (1973)) (declining to issue a certificate of appealability on petitioner's claim that CALJIC No. 2.21.2 violated due process).

Petitioner has failed to demonstrate that the "instruction by itself so infected the entire trial that the resulting conviction violates due process," *Estelle,* 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147), or "'a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde*, 494 U.S. at 380). Accordingly, petitioner is not entitled to relief on this claim of jury instruction error.

3. CALJIC No. 1.22

Petitioner's next claim is that the trial court erred in instructing the jury with "the wrong definition of 'malice,'" thereby violating his rights to a jury trial and due process. Pet. at 9. The state court record reflects that petitioner's jury was instructed pursuant to CALJIC No. 1.22 with the definition of "malice" contained in Cal. Pen. Code § 7, as follows: "The words "malice" and "maliciously" import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act." CT at 236. The jurors were also instructed, pursuant to CALJIC No. 8.66, that in order to find petitioner guilty of attempted murder, they must find that he "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." Reporter's Transcript on Appeal (RT) at 355. In California, the crime of attempted murder requires a finding of the specific intent to kill. *People v. Lee*, 43 Cal.3d 666, 669-70 (1987).

This claim was rejected by the California Court of Appeal in a written decision on petitioner's direct appeal, and by the California Supreme Court without comment on petition for review. The California Court of Appeal concluded that the trial court erred in giving CALJIC No. 1.22. However, the court found that the error was harmless. The court explained its reasoning as follows:

////

Appellant finally contends that the court erred by instructing the jury on the definition of malice in CALJIC No. 1.22 which gives the general definition of the word "malice" as defined in Penal Code section 7.  Appellant is correct that it is error to instruct on this definition of malice when the charge is murder.  However, the courts have also uniformly held that the error is harmless when the court correctly instructs the jury on the more specific definition of malice aforethought as an element of murder.  (See, e.g., *People v. Price* (1965) 63 Cal.2d 370, 374; *People v. Chavez* (1951) 37 Cal.2d 656, 666; *People v. Shade* (1986) 185 Cal.App.3d 711, 715; *People v. Harris* (1985) 175 Cal.App.3d 944, 956; *People v. Powell* (1963) 219 Cal.App.2d 389, 393.)  The court in *People v. Chavez, supra,* 37 Cal.2d at p. 666, adopted the reasoning of a decision of the court of appeal, that the error in giving CALJIC No. 1.22 was harmless because the jury would follow the more specific definition of malice aforethought as an element of murder.

The court, in this case, specifically instructed the jury, pursuant to CALJIC No. 8.66 that : " . . . In order to prove the attempted murder, each of the following elements must be proved . . . . 2.  The person committing the act harbored express malice aforethought, namely *a specific intent to kill* unlawfully another human being."  The jury therefore was not only clearly informed that it had to find intent to kill, but also that, for the purpose of finding appellant guilty of attempted murder, *malice aforethought* is defined as "a specific intent to kill unlawfully another human being."  Although giving CALJIC No. 1.22 was error, it was harmless in light of this more specific instruction that the jury had to find intent to kill, in order to convict him of attempted murder.  (*People v. Price, supra,* 63 Cal.2d 370, 374; *People v. Chavez, supra,* 37 Cal.2d 656, 666.)[8]

Appellant's reliance upon *People v. Lee, supra*, 43 Cal.3d 666, *People v. Ratliff* (1986) 41 Cal.3d 675, and *People v. Johnson* (1981) 30 Cal.3d 444, for the proposition that the definition of malice in CALJIC No. 1.22, and definition of malice aforethought in CALJIC No. 8.66 are conflicting instructions on an element of the offense, requiring reversal if the evidence of intent to kill is not conclusive, is misplaced.  These cases did not involve CALJIC No. 1.22.  Instead, they involved the entirely different error that occurs when the court, in the context of a charge of attempted murder, or assault with intent to commit murder, incorrectly defines malice aforethought in include implied malice, *which does not require the specific intent to kill*, or informs the jury in one instruction that attempted murder requires the specific intent to kill, but then, when defining malice aforethought, includes the definition of implied malice informing the jury that "it is not necessary to establish that

---

[8]  Appellant notes only that these cases are "older," but fails to explain why these decisions of our supreme court are not controlling in this case.

the defendant intended that his act would result in the death of a
human being." (*People v. Lee, supra,* 43 Cal.3d 666, 670; *People
v. Ratliff, supra,* 41 Cal.3d 675, 695-696; and *People v. Johnson,
supra,* 30 Cal.3d 444, 447-449.)  In those circumstances there is
either a direct conflict between two instructions on the necessity of
finding intent to kill as an element of attempted murder, or an error
in the instruction on the element of intent to kill that is not cured
by reference to another more specific instruction.

Opinion at 9-11 (emphasis in original).

Where a trial court fails "to properly instruct the jury regarding an element of the

charged crime," the court commits "a constitutional error that deprives the defendant of due

process." *Conde v. Henry*, 198 F.3d 734, 740 (9th Cir. 1999) (quoting *Hennessy v. Goldsmith*,

929 F.2d 511, 514 (9th Cir. 1991)).  However, harmless error analysis is ordinarily applied to

trial errors, including a jury instruction that actually omits an element of the offense.  *See Neder

v. United States*, 527 U.S. 1, 8, 11 (1999).  In determining whether the trial court's error in

giving CALJIC No. 1.21 entitles petitioner to habeas relief, this court must ask "whether the

error had a substantial and injurious effect" on the outcome of the trial.  *Brecht*, 507 U.S. at 637.

Under this standard of review, a habeas court may not grant habeas relief unless petitioner can

establish that, as a result of the state trial court's error, he suffered "actual prejudice;" i.e., that as

a result of the error, the outcome of the trial was rendered fundamentally unfair.  *Id.*[9]

Petitioner claims, in essence, that the trial court gave conflicting jury instructions

regarding the malice required for a guilty finding on the charge of attempted murder.  However,

these two jury instructions are not necessarily in direct conflict: the general jury instruction

simply defined malice as a general matter, whereas the specific jury instruction explained that

the criminal act of attempted murder requires specific intent to kill.  There is no evidence that the

---

[9]  The conclusion of the California Court of Appeal that the trial court erred as a matter of
state law when it gave CALJIC 1.22 at petitioner's trial is not reviewable in this federal habeas
corpus proceeding.  *See Estelle*, 502 U.S. at 67-68 (a federal writ is not available for alleged
error in the interpretation or application of state law); *Park*, 202 F.3d at 1149 (same).  The issue
before this court is whether the erroneous jury instruction violated petitioner's federal
constitutional rights.

1  jurors believed the more general definition of malice applied to their decision with respect to

2  whether petitioner was guilty of attempted murder; indeed, the plain language of CALJIC No.

3  8.66 told them otherwise.  This court also notes that the correct statement of the malice

4  requirement appeared in the part of the instructions that set out the elements of the crime of

5  attempted murder, whereas CALJIC No. 1.21 was buried in the introductory background

6  definitions part of the jury instructions.  Further, the jury was instructed that in the crime of

7  attempted murder there must exist a union of act and intent and that "the specific intent required

8  is included in the definition of the crimes set forth elsewhere in these instructions."  CT at 251.

9  These circumstances undercut any argument that the jury may have relied on the general

10 instruction as opposed to the specific instruction in finding petitioner guilty of attempted murder.

11         Because petitioner's jury was prominently instructed on the correct definition of

12 malice for a guilty finding on the charge of attempted murder, and because substantial evidence

13 supporting a finding of express malice, the error in giving CALJIC No. 1.22 could not have had

14 a substantial and injurious effect or influence on the verdict.  *See Estelle,* 502 U.S. 62.  The

15 decision of the state appellate court to the same effect is not contrary to or an unreasonable

16 application of United States Supreme Court authority.  Accordingly, petitioner is not entitled to

17 relief on this claim.

18         F.  Cumulative Error

19         Petitioner claims that the cumulative effect of all the errors at his trial violated his

20 due process right to a fair trial.

21         The Due Process Clause of the Fourteenth Amendment encompasses the right to a

22 fair trial.  *In re Murchison*, 349 U.S. 133, 136 (1955).  However, as the United States Supreme

23 Court stated in *Rose v. Clark*:

24         The thrust of the many constitutional rules governing the conduct
         of criminal trials is to ensure that those trials lead to fair and
25         correct judgments.  Where a reviewing court can find that the
         record developed at trial establishes guilt beyond a reasonable
26         doubt, the interest in fairness has been satisfied and the judgment

should be affirmed.  As we have repeatedly stated, "the

Constitution entitles a criminal defendant to a fair trial, not a
perfect one."

478 U.S. 570, 579 (1986) (quoting *Van Arsdall*, 475 U.S. at 681.

 This court has addressed each of the issues raised in the pending petition and concludes that they did not render petitioner's trial fundamentally unfair, either individually or in the aggregate.  Indeed, of all of the claims asserted by petitioner, the state court found only one harmless state-law error committed by the trial court.  There simply is no accumulation of errors here.  Moreover, the United States Supreme Court has not articulated a claim of "cumulative error."[10]  Accordingly, any decision by the California courts with respect to this claim is not contrary to or an unreasonable application of federal law as determined by the United States Supreme Court.  *See Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004) (state court's decision not contrary to federal law where no United States Supreme Court precedent exists).

 For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

 These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

////

////

////

---

[10]  The Ninth Circuit Court of Appeals has stated that where "no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant."  *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996).  *See also Karis v. Calderon*,  283 F.3d 1117, 1132 (9th Cir. 2002) (same).

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:   September 25, 2006.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

garnes527.hc